IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

TIMOTHY O. BROWN, )
)
    Plaintiff, )
)
vs. ) Case No. 08-CV-708-TLW
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

**OPINION AND ORDER**

    Plaintiff Timothy Brown seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A).  In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.  [Dkt. # 9].

    Plaintiff's applications for disability insurance benefits and supplemental security income were filed on January 30, 2006, alleging an onset date of June 28, 2005.  [R. 116, 125].  The Administrative Law Judge ("ALJ") held a hearing on April 11, 2007.  [R. 24].  On June 15, 2007, the ALJ issued a decision finding that plaintiff was disabled from June 28, 2005 until August 4, 2006, and thereafter plaintiff's condition medically improved such that his disability ended on August 4, 2006.  [R. 21-22].  The Appeals Council denied review on October 31, 2008.  [R. 1].  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.  On December 2, 2008, plaintiff filed the subject action with this Court.  [Dkt. # 1].

    The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g)

is only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

On appeal, the plaintiff asserts the ALJ erred in failing to give evidentiary support for terminating his benefits on August 4, 2006, failing to give specific reasons for his credibility determination, and failing to include all of his limitations in the hypothetical question he presented to the vocational expert. [Dkt. # 14 at 6].

The Social Security Administration's regulations define medical improvements as any decrease in the medical severity of the impairment which was present at the time of the most favorable medical decision showing the plaintiff to be disabled. A determination that there has been a decrease in medical severity must be based on improvements in the symptoms, signs, and/or laboratory findings associated with the impairment. See 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). The medical improvement standard applies in cases such as this one, where the ALJ determines in a single decision that the plaintiff was disabled for a specific period of time (for a minimum of one year) and then the disability ended. See Shepherd v. Apel, 184 F.3d 1196, 1199 (10th Cir. 1999).

The Commission bears the burden of showing medical improvement by establishing that plaintiff's medical condition has improved, the improvement is related to the plaintiff's ability to

work, and the plaintiff is currently able to engage in substantial gainful activity. Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994).

## Background

Plaintiff was born on September 20, 1966, and was 40 years old on the date of the hearing before the ALJ. [R. 33]. Plaintiff finished the tenth grade in high school and later earned a GED. [R. 34]. He received additional training as a machinist through Job Corp. [R. 34]. Plaintiff has worked as a mechanic at an amusement park, an employee at a salvage yard and machine shop, a cabinet maker, and a roofer. [R. 38-40]. On June 28, 2005, while working on a roof, plaintiff fell from a height of 25 feet, landing on his heels, and shattering both heels in several places. He was in a cast for a couple of months, had surgery, received physical therapy and progressed from using a wheel chair, to intermittent use of a cane. [R. 228]. Plaintiff alleges disability due to the injuries he received to his heels from the fall on June 28, 2005. [R. 116, 125].

The ALJ found on June 28, 2005, plaintiff injured his heels when he fell 25 feet from a roof. X-rays of his heels revealed severe fractures. He was placed in bilateral leg splits and instructed to use a wheel chair for at least 6 to 8 weeks. X-rays on September 8, 2005, showed the fractures healed, and plaintiff was allowed to begin ambulating. On November 17, 2005, the plaintiff was able to stand and walk to a mild degree but had lost substantial muscle mass in both upper and lower extremities. On January 26, 2006, plaintiff was diagnosed with plantar fasciitis as a result of his fractures.[1] On February 23, 2006, plaintiff underwent release of the plantar fascia in the right heel.

---

[1] Plantar fasciitis involves pain and inflammation of a thick band of tissue, called the plantar fascia, which runs across the bottom of the foot – connecting the heel bone to the toes. See www.mayoclinic.com/health.

[R 16]. The ALJ determined plaintiff's severe disability to be status post bilateral calcaneal fractures and post right plantar fascia release. [R. 16]. The ALJ determined that from June 28, 2005 through August 4, 2006, the period of plaintiff's disability, he did not have an impairment or combination of impairments that met or medically equaled one of the listings. [R. 16]. The ALJ found plaintiff's testimony credible as to the physical limitations caused by his impairment during the period of disability. The ALJ determined that plaintiff's residual functional capacity (RFC) was limited to lifting and carrying 10 pounds occasionally, 5 to 10 pounds frequently, and 3 pounds overhead lifting. Plaintiff could walk or stand 2 hours and sit 6 hours, in an 8-hour work day. He required frequent breaks averaging 10-15 minutes per hour throughout the workday because of chronic pain and side effects from medication and he had to elevate his foot 18-24 inches for one-third of the day. He was afflicted with moderate chronic intermittent pain and fatigue but nevertheless was able to remain attentive and responsive at work, but he was unable to return to his past work as a roofer. [R. 16-17]. Based on the testimony of the vocational expert, the ALJ found there were no jobs that existed in significant numbers in the national economy that plaintiff could perform. Thus, the ALJ concluded that plaintiff was disabled from June 28, 2005 through August 4, 2006. [R. 18].

      The ALJ further found that by August 4, 2006, plaintiff demonstrated medical improvement which was related to his ability to work. He again found that plaintiff's severe impairments did not meet the impairment listings 1.02 (pertaining to major dysfunction of a joint due to any cause) and listing 1.03 (pertaining to reconstructive surgery or surgical arthrodesis of a major weigh-bearing joint). The ALJ found that as of August 4, 2006, plaintiff was able to ambulate effectively. The ALJ determined plaintiff had the RFC to perform sedentary work, subject to certain limitations, and that he was unable to return to his past work as a roofer. The ALJ determined that plaintiff's testimony

regarding the limiting effect of his physical limitations after August 4, 2006, was not entirely credible. Based on the testimony of the vocational expert, the ALJ determined that jobs existed in the national economy which plaintiff could perform, including work as an assembler and machine operator. [R. 21]. This finding was made at the fifth step in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]

## Discussion

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of an impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

"acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

As his first and second assignments of error, plaintiff contends the ALJ's decision is not supported by substantial evidence, because he found plaintiff's testimony less than credible and he ended plaintiff's disability effective August 4, 2006, without citing evidence to support his determination. The Court disagrees. The ALJ summarized plaintiff's testimony.

> The claimant testified at the hearing that he can walk and/or stand about 20 minutes than [sic] has pain. He stated that he has a cane, but did not bring it to the hearing. The claimant testified that he can sit for 30-60 minutes then his foot starts throbbing. He stated that he has trouble walking on uneven surfaces and has trouble carrying weight. The claimant testified that his pain was unbearable at times.

[R. 20]. The ALJ relied on the opinion of plaintiff's treating physician which was based on objective medical evidence and the concurring opinion of three medical experts with the State Agency that after August 26, 2006, plaintiff demonstrated medical improvements related to his ability to work and that he had the RFC to perform at least sedentary work, with limitations. The ALJ found:

> [O]n May 11, 2006, Dr. Morris [plaintiff's treating physician] stated that the claimant was doing fine and used a cane intermittently in order to help ambulate better because he had good days and bad days. Dr. Morris stated that the claimant understood that he was not permanently disabled from any type of work, 'only that he is disabled from roofing' (Exhibit 5F, page 2). Dr. Morris stated that the claimant was at maximum medical improvement and would be able to perform sedentary work activity (Exhibit 5F, page 2). The claimant was released to return to sedentary work (Exhibit 6F, page 2). The Administrative Judge concurs with Dr. Morris' opinion.
>
> The Administrative Law Judge does not discount all of the claimant's complaints. However, the claimant's treating physician did not place any functional restrictions on his activities that would preclude sedentary work activity with the previously mentioned restrictions. The claimant is taking no prescription pain medication (Exhibit 10E). Given the objective medical evidence in the record, the Administrative Law Judge finds that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of his symptoms. Three medical experts with

>the State Agency determined that the claimant could perform at least sedentary work (Exhibit 7F, 8F, and 9F).

[R. 20]. The medical evidence of record supports the ALJ's finding that plaintiff's condition improved as of August 4, 2006 to allow him to perform work activities after that date. Plaintiff does not reference any medical evidence but relies solely on plaintiff's subjective complaints of pain to challenge the ALJ's determination. Three agency physicians concurred with the opinion of plaintiff's treating physician, Dr. Jeffrey Morris. There was no contrary medical evidence of record. "An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001). Dr. Morris' opinion was not contrary to any other medical evidence of record.

Further, the ALJ linked his credibility determination to supporting evidence. He thoroughly explained his credibility determination, citing inconsistencies between plaintiff's testimony regarding his inability to stand because of pain and reports given by his treating physician and evidence that he was not taking any pain medication. In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995), the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors. The court explained that the ALJ must refer to the specific evidence he is relying on in determining credibility and link his credibility findings to specific evidence. Id. at 391. In the instant case, the ALJ complied with this standard. In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court stated that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility,

the dictates of Kepler are satisfied." Id. at 1372.  "Credibility determinations are peculiarly the province of the finder of fact."  Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005).  In assessing the credibility of pain testimony, various factors are relevant, including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Id. at 571 (citing Branum v. Barnhart, 385 F.3d 1268, 1273-74 (10th Cir. 2004)).  In this instance, the ALJ noted that plaintiff was not on any pain medication, that he used a cane only intermittently, and that his treating physician did not place any functional restrictions on his activities that would preclude sedentary work activity, with the prescribed limitations.  This identification of specific evidence is sufficient, especially in view of that lack of any medical evidence to support plaintiff's claim of disabling pain.

Finally, plaintiff contends the ALJ erred by not including all of plaintiff's limitations in the hypothetical question presented to the vocational expert.  Specifically, plaintiff contends the hypothetical question did not appropriately address plaintiff's limited ability to walk, and his intermittent use of a cane.  Plaintiff claims his limited capacity to ambulate eliminates all sedentary work.  The Court disagrees.

The plaintiff did not cite authority for his proposition that intermittent use of a cane for walking eliminates all sedentary work; nor did plaintiff cite to any evidence showing a medical need for using a cane.  Social Security Ruling 96-9p, provides in relevant part:

> **Medically required hand-held assistive device:** to find that a hand-held assistive device is medically required, there must be medical documentation establishing the

>need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Id. At the hearing the ALJ asked plaintiff whether he used a cane to walk.

>Q:   Did you ever have to use a cane or a walker to steady yourself, or been told to get one?
>
>A.   Yes, sir. I do have one.
>
>Q.   All right. Now you don't have it with you today. Do [sic] you just leave it home or leave it in the car or what happened?
>
>A.   Well I left it because I wasn't, I didn't think I was going to have to walk very far. If there's a long distance ahead of me, a few blocks, or over a few blocks, I would definitely have my cane with me.

[R. 48]. The record contains evidence that plaintiff may have problems walking a long distance without the use of a cane. The only other reference to use of a cane is the ALJ's reference to Dr. Morris' examination notes that plaintiff "was doing fine and used a cane intermittently in order to help ambulate better because he had good days and bad days." The ALJ noted that plaintiff "understood that he was not permanently disabled from any type of work, only that he is disabled from roofing" and that Dr. Morris released the plaintiff to return to sedentary work. Thus, there was no evidence of medical need for a cane or other assistive device. "SSR 96-9p requires more than generalized evidence of a condition that might require use of a cane. It requires medical documentation <u>establishing the need</u> for a hand-held assistive device to aid in walking or standing, and describing the circumstance for which it is needed." Staples v. Astrue, 329 Fed.Appx. 189, 192

(10th Cir. 2009) (emphasis in text) (unpublished).[3]

In his hypothetical question to the vocational expert, the ALJ included a limitation of "mild to moderate chronic pain or fatigue or even depression, all variously described and assumed of sufficient severity so as to be noticeable to that person at all times, yet able to remain attentive and responsive within the above limitations that I've just given to you." [R. 60]. Thus the hypothetical question propounded by the ALJ included a factor of "mild to moderate chronic pain" which was a sufficient limitation to account for plaintiff's injury to his heels. Plaintiff's subjective testimony to the contrary, by itself, was insufficient to establish a disabling impairment after August 4, 2006. "The ALJ is only required to ask hypotheticals encompassing impairments that find support in the record." See Jordan v. Heckler, 835 F.2d 1314, 1317 (10th Cir. 1987). Thus, the Court finds no error in the ALJ's determination and the correct legal standards were applied.

## Conclusion

Based on the foregoing, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

IT IS SO ORDERED this 30th day of July, 2010.

_____
T. Lane Wilson
United States Magistrate Judge

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.